UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARBARA JOAQUIN,

    Plaintiff,

v.     Case No: 14-cv-1160-RCL

DISTRICT OF COLUMBIA,

    Defendant.

FILED
SEP 28 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

### I. INTRODUCTION

This case is before the Court on plaintiff's motion for attorney fees, ECF No. 23. The case was referred to a magistrate judge and on March 9, 2016, Magistrate Judge Alan Kay issued a Report and Recommendation, ECF No. 26. This Court accepts and adopts in part, modifies in part, and rejects in part Magistrate Judge Kay's analysis and recommendations. For the reasons stated below, plaintiff's motion for attorney's fees is granted in part and denied in part.

### II. BACKGROUND

The factual background of this case is set out in Magistrate Judge Kay's Report and Recommendation. *See* R. & R. 2–4, ECF No. 26. In sum, after a due process hearing, the Hearing Officer determined that District of Columbia Public Schools ("DCPS") denied plaintiff's child, J.J., a free appropriate public education pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. *Id.* at 4. This Court also granted plaintiff's motion for summary judgment and ordered DCPS to deliver to plaintiff a full copy of J.J.'s communication log and student history records. *Id.* Plaintiff subsequently filed a motion for attorney's fees and costs incurred during the administrative proceeding and summary judgment proceeding. *Id.*

1

There are generally three different systems used to determine attorneys' fees in these cases, all of which are based on the "*Laffey* Matrix" derived from *Laffey v Northwest Airlines, Inc.*, 572 F. Supp. 354, 374 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *Id.* at 5. First, the USAO *Laffey* Matrix is calculated by the U.S. Attorney's Office for D.C. and uses the original 1980–81 rates from *Laffey*, then accounts for inflation by using the Consumer Price Index. *Id.* Second, the LSI *Laffey* Matrix—sometimes called the LSI/*Salazar* Matrix—uses the *Laffey* matrix updated with the 1989 rates, then accounts for inflation by using the Bureau of Labor Statics's legal services index. *Id.* The LSI *Laffey* rates are higher than the USAO *Laffey* rates. Third, several courts within this District have used the USAO *Laffey* rates as a starting point, but have awarded fees in IDEA litigation at 75% of those rates. *See, e.g., Snead v. District of Columbia*, 139 F. Supp. 3d 375, 381 (D.D.C. 2015).

Magistrate Judge Kay, after finding that plaintiff was the prevailing party, concluded that IDEA litigation is not sufficiently complex to warrant full *Laffey* rates. R. & R. 14. Magistrate Judge Kay found that "[b]ecause the Plaintiff has not argued that this case was particularly complex, [he saw] no reason to depart from the majority of recent IDEA cases in this Court that have found that 75% of the USAO *Laffey* matrix to be a reasonable hourly rate." *Id.* at 15. He recommended that this Court award 75% of the USAO *Laffey* rate as a reasonable hourly rate. *Id.* Magistrate Judge Kay further recommended using the current 2015–16 USAO *Laffey* rates as opposed to the "historic" *Laffey* rates that applied at the time the work was completed. *Id.* at 15–16. Finally, Magistrate Judge Kay recommended deducting 4.7 hours from the total hours billed for non-reimbursable work, and recommended discounting rates for 6 hours of travel time, 12.45 hours of fees-on-fees litigation, and discounting copying costs. *Id.* at 18–22. Magistrate Judge

Kay recommended not reducing or discounting hours billed for allegedly unrelated work and unsuccessful motions, and for hours allegedly double-billed. *Id.* Thus, Magistrate Judge Kay recommended that plaintiff be awarded $35,616.40. *Id.* at 24.

## III. ANALYSIS

This Court accepts and adopts in full Part II.A of Magistrate Judge Kay's Report and Recommendation—Prevailing Party Status. This Court accepts and adopts Part II.B.2 of Magistrate Judge Kay's Report and Recommendation—The Number of Hours Reasonably Expended on the Litigation—only modifying the numerical calculations in accordance with the Court's decision below. Finally, the Court rejects Part II.B.1.a of Magistrate Judge Kay's Report and Recommendation—The Prevailing Market Rate for IDEA Litigation—but accepts and adopts Part II.B.1.b—Whether to Apply Current or Historic Rates.

In sum, this Court concludes that plaintiff is the prevailing part and that the 2015–2016 USAO *Laffey* Matrix should be used to determine the appropriate fee award, but that some of the hours billed will be deducted and that the fee rate for others will be reduced.

### A. Prevailing Party Status

The Court accepts and adopts in full Part II.A of Magistrate Judge Kay's Report and Recommendation, which concludes that plaintiff is the prevailing party here.

### B. Establishing a Reasonable Fee

#### 1. *Legal Framework*

The IDEA provides that courts may award reasonable attorney's fees to prevailing parties. 20 U.S.C. § 1415(i)(3)(B)(i). The fees must be "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). A three part analysis guides the assessment of whether a requested fee award is

3

reasonable: "First, the court must determine the 'number of hours reasonably expended in litigation.' Second, it must set the 'reasonable hourly rate.' Finally, it must determine whether use of a multiplier is warranted." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (internal citations omitted). To determine a reasonable hourly rate, the court considers "(1) the attorney['s] billing practices, (2) the attorney['s] skill, experience, and reputation and (3) the prevailing market rates in the relevant community." *Id.* (internal quotation marks omitted). Attorney's fee litigation employs a burden-shifting scheme:

> The fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates. Once an applicant meets this initial burden, a presumption applies that the number of hours billed and the hourly rates are reasonable. At that point, the burden shifts to the opposing party to provide specific contrary evidence tending to show that a lower rate would be appropriate.

*Flood v. District of Columbia*, No. CV 15-497 (BAH), 2016 WL 1180159, at *3 (D.D.C. Mar. 25, 2016) (internal citations and quotation marks omitted). Defendant here contests the reasonableness of the hourly rate requested by plaintiff.

Shortly before plaintiff filed its motion, the D.C. Circuit decided *Eley v. District of Columbia*, 793 F.3d 97 (2015). Although the court declined to decide "whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix," *id.* at 105, it appears to have reframed the inquiry surrounding a plaintiff's burden to show that the proposed rates are reasonable. Chief Judge Howell most recently examined the effect of the D.C. Circuit's *Eley* decision on IDEA reimbursement litigation in *Flood v. District of Columbia*. Chief Judge Howell concluded that *Eley* suggests that IDEA fee applicants may meet their burden of demonstrating that the requested reimbursement rate is reasonable in two alternate ways: "First, the applicant may demonstrate that IDEA proceedings qualify as 'complex federal litigation,' to which *Laffey* rates presumptively apply. Second, alternatively, a fee applicant may demonstrate that rates customarily

4

charged by IDEA practitioners in the District are comparable to those provided under the USOA *Laffey* Matrix." *Flood*, 2016 WL 1180159, at *9. This Court agrees with Chief Judge Howell's analysis and sees no reason to depart from the framework enunciated in the *Flood* decision.

In support of the first conclusion, Chief Judge Howell found that the D.C. Circuit in both *Eley* and *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) "suggest[ed] a categorical approach to identifying reasonable reimbursement rates for prevailing IDEA plaintiffs." *Id.* at *6. In the past, members of this Court have "drawn a distinction between 'complex' IDEA cases, for which full *Laffey* rates may be available, and 'non-complex' cases that generally entitle a prevailing claimant to reimbursement at a reduced rate." *Id.* at *7. Under the post-*Eley* approach outlined by Chief Judge Howell, however, reasonable rates are to be determined without regard to the complexity of the particular IDEA litigation at hand. *See id.* at *6–8.

Additionally, under this framework, even if IDEA litigation ultimately categorically does not qualify as complex federal litigation, a plaintiff may also "justify reimbursement at *Laffey* rates based simply on *direct* evidence of fees typically collected by her attorney and other attorneys engaged in IDEA litigation in the District of Columbia." *Flood*, 2016 WL 1180159, at *9. To prove this "prevailing market rate," fee applicants have the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Applicants may submit fee matrices, which serve as a starting point for calculating the prevailing market rate. *Eley*, 793 F.3d at 100. These may be supplemented by other evidence including "surveys to update [the matrices]; affidavits reciting the precise fees that attorneys with similar qualifications have

5

received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 100 (internal quotation marks omitted).

### 2. *The Reasonableness of Plaintiff's Hourly Rates*

The Court finds that plaintiff has submitted sufficient evidence to satisfy the first prong enunciated in *Flood*: "the applicant may demonstrate that IDEA proceedings qualify as 'complex federal litigation,' to which *Laffey* rates presumptively apply." *Flood*, 2016 WL 1180159, at *9. Plaintiff has thus satisfied her initial burden, and the burden shifted to defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Eley v. D.C.*, No. CV 11-309 (BAH), 2016 WL 4435187, at *3 (D.D.C. Aug. 22, 2016) (quoting *Covington v. D.C.*, 57 F.3d 1101, 1110 (D.C. Cir. 1995)). Defendant has failed to meet this burden. Although plaintiff has established that *Laffey* rates apply, she has failed to show that LSI *Laffey* rates are appropriate here. The Court will therefore award fees based on the USAO *Laffey* Matrix. In addition, the Court will use the rates established by the 2015–2016 USAO *Laffey* Matrix.

    *a.*  *Plaintiff has met her burden of showing that IDEA cases are sufficiently complex to warrant Laffey rates*

In support of her claim for attorney's fees, plaintiff submitted six declarations from attorneys stating that they have found IDEA litigation to be at least as complex as other types of complex federal litigation. *See* Tyrka Decl. ¶ 18, ECF No. 23-5, Savit Decl. ¶ 6, ECF No. 23-6, Moran Decl. ¶ 5, ECF No. 23-7, Hill Decl. ¶ 4, ECF No. 23-8, Mendoza Decl. ¶ 4, ECF No. 23-9, Hecht Decl. ¶ 4, ECF No. 23-10. This Court will not restate the reasons each attorney gave in support of their assertions that IDEA litigation is complex; all six generally made the same or similar assertions and they can be found in full in plaintiff's documents. Generally, however, the declarations stated that IDEA cases "require[] specialized non-legal knowledge regarding special

education." Tyrka Decl. ¶ 19. This includes "knowledge of education policies, procedures, techniques, best practices, records, and administration" and "knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others." *Id.* In addition, the limited discovery and pretrial proceedings in IDEA cases "makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses." *Id.* ¶ 21. This necessitates the preparation of "very many potential defense cases presented by the respondent." *Id.* Finally, the attorneys declared that "the administrative work is generally at least as complex as the federal work" in IDEA cases. *Id.* ¶ 22. They explain that "because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level," and "one must be very familiar with every existing document and must prepare for a broad range of 'surprise' testimony, including possible testimony from a diverse range of experts." *Id.*

Other courts in this District have acknowledged the complexity of IDEA litigation. *See Merrick*, 134 F. Supp. at 339 (collecting cases and finding that "IDEA litigation is sufficiently complex to warrant full *Laffey* rates"); *see also Sweatt v. District of Columbia*, 82 F. Supp. 3d 454, 459 (D.D.C. 2015); *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 243 (D.D.C. 2012) (finding that *Laffey* rates should serve as a starting point in IDEA cases because they often involve appeals to federal court and the administrative component typically requires expert testimony); *Irving v. D.C. Pub. Sch.*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011) (reaffirming "that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix"); *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 102 (D.D.C. 2010); *Cox v. District of Columbia*, 754 F. Supp. 2d

66, 76 (D.D.C. 2010) ("Defendant's claim that B.S. and E.J.'s hearings were 'uncomplicated' is absurd, as any reading of the comprehensive decisions by the two Hearings Officers in these cases demonstrates."). The court in *Merrick* summarized: "IDEA cases require testimony from education experts regarding whether a student has been denied a free and public education, . . . and plaintiffs' counsel must understand the bureaucratic workings of [DCPS], . . . and become conversant with a wide range of disabling cognitive, emotional, and language-based disorders and the corresponding therapeutic and educational approaches." *Merrick*, 134 F. Supp. at 339. Notably, the court in *Merrick*, in coming to this conclusion, relied on declarations by Diana Savit, who "describe[ed] the particular challenges that arise in special education cases," and Charles Moran, who "desrcib[ed] the frequent delays, unrealistic settlement offers, and time-consuming fee litigation that increase the complexity of IDEA cases." *Id.* Both Ms. Savit and Mr. Moran submitted similar declarations in this case attesting to the complexity of IDEA litigation. Finally, although the D.C. Circuit has declined to decide this issue, Judge Kavanaugh stated in his *Eley* concurrence that in his view, "the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases." *Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring).

       *b.* *Defendant has failed to provide specific evidence justifying a reduction in rates*

The Court finds that defendant failed to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995). Defendant relies primarily on two types of evidence in its argument that a lower rate—specifically 75% of the USAO *Laffey* matrix—is appropriate here: (1) assertions regarding the lack of complexity in the litigation here; and (2) citations to cases in this District finding that 75% of the USAO *Laffey* matrix was appropriate.

First, after the D.C. Circuit's decision in *Eley*, it is clear that the relative complexity or non-complexity of a specific IDEA case is irrelevant to the determination regarding the reasonableness of the fee rate. Reasonable rates are to be determined using a categorical approach, without regard to the complexity of the particular IDEA litigation at hand. *Flood*, 2016 WL 1180159, at *6–8. Therefore, this evidence does not persuade the Court that a reduction in rates is warranted. *See id.* at *15 ("[T]he District's effort to cast the underlying proceeding in this action as non-complex is generally misplaced following *Eley*."). The Court notes that defendant has provided citations to non-binding cases which state that IDEA litigation is generally not as complex as other types of complex litigation. *See* Def.'s Opp. 8–9, ECF No. 24. The Court acknowledges that there is a difference of opinions among members of this Court regarding the complexity of IDEA litigation as a category, but finds that these cases do not constitute specific evidence that a lower rate is appropriate.

The Court also does not dispute that several other courts in this district have used a rate equal to 75% of the USAO *Laffey* matrix in IDEA cases. Again, however, "to the degree that prior fee awards rely to some degree on the distinction between 'complex' IDEA cases, for which full *Laffey* rates apply, and 'non-complex' IDEA cases, for which fee applicants are entitled only to three-quarters of the otherwise applicable *Laffey* rate, these decisions appear to be inconsistent with the categorical approach recommended in Eley." *Flood*, 2016 WL 1180159, at *16. Defendant has not introduced specific evidence showing that a 25% reduction is warranted here. *See Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012) ("Though some cases in this Circuit have done so, defendant provides no specific facts in this case that would proscribe this reduction.").

9

More importantly, this Court sees no reason to arbitrarily reduce the applicable *Laffey* rates to 75%. "[A]n automatic reduction in the plaintiff's requested reimbursement rate based only on the simplicity of an administrative proceeding runs counter to the Supreme Court's view that the relative complexity of a matter is generally presumed to be reflected fully in the number of hours billed." *Flood*, 2016 WL 1180159, at *7 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)). Automatically reducing rates risks "double-counting" the simplicity of the litigation. *Id.* Because a fee is determined by the number of hours works multiplied by the hourly rate, "reducing the *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice." *Merrick*, 134 F. Supp. 3d at 339.

If IDEA litigation is truly "simpler" than other federal litigation, attorneys can be expected to bill less hours, thereby resulting in an overall lower fee. If a court believes that an attorney has overbilled or improperly billed hours for the purpose of raising his or her fee, or has simply billed an unreasonable number of hours, the court may then "make an independent determination whether or not the hours claimed are justified." *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). The court may, for example, reduce the fee award for inadequate billing judgment, *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), for hours billed unrelated or unnecessary to the litigation, *see Czarniewy v. District of Columbia*, No. CIV.A. 02-1496(HHK), 2005 WL 692081, at *4 (D.D.C. Mar. 25, 2005), for statutorily non-reimbursable time, *see A.S. v. District of Columbia*, 842 F. Supp. 2d 40, 47 (D.D.C. 2012), or for double-billing, *see Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004). Therefore, the Court finds that plaintiff has provided sufficient evidence, in the form of declarations from attorneys practicing in this area of law, showing that IDEA proceedings are sufficiently complex and

therefore that *Laffey* rates apply. Defendant has failed to provide sufficient evidence justify a 25% reduction in rates.

###### c. *Plaintiff has failed to justify LSI Laffey Rates*

The Court, after determining that *Laffey* rates apply to the fee award here, must determine which *Laffey* rates apply. Although plaintiff has requested rates consistent with the LSI *Laffey* matrix, the Court finds that the appropriate matrix is the USAO *Laffey* matrix. Plaintiff has failed to present evidence that the prevailing market rate for attorneys in IDEA litigation matches the rates set out in the LSI *Laffey* matrix. "[T]he D.C. Circuit has made clear that an IDEA plaintiff seeking reimbursement based on a *Laffey*-derived fee matrix must demonstrate that the rates provided by such a matrix align with those generally commanded by IDEA practitioners in the District." *Eley v. D.C.*, No. CV 11-309 (BAH), 2016 WL 4435187, at *5 (D.D.C. Aug. 22, 2016). Plaintiff has not shown that the rates provided by the LSI *Laffey* matrix align with those generally received by other IDEA practitioners.

Chief Judge Howell's recent *Eley* opinion on remand is instructive. On remand, the plaintiff requested reimbursement based on the LSI *Laffey* matrix. *Eley*, 2016 WL 4435187, at *4. The District requested that reimbursement rates be based on the USAO *Laffey* matrix. *Id.* The court concluded that the plaintiff failed to show that reimbursement using the LSI *Laffey* Matrix was reasonable. *Id.* at *5. The plaintiff's initial evidence consisted of the following: "(1) a declaration from her attorney describing his experience litigating IDEA cases and practice of matching his hourly rate for fee-paying clients to the *Salazar*/LSI Matrix; and (2) a declaration from the economist who developed the *Salazar*/LSI Matrix explaining the methodology underlying that matrix and identifying four cases in which Judges in this District and another District used that matrix to calculate reasonable fee award." *Id.* at *6 (internal citations omitted). She

11

supplemented this evidence with the following: "(1) a second declaration from her attorney, who now describes his experience in both IDEA cases and other civil rights actions and avers that IDEA cases generally present more complexity than other matters he has litigated, (2) declarations from five other attorneys who regularly take on IDEA cases and similarly aver, often deploying nearly identical language, that such cases often present numerous challenges that together make preparation and litigation of such matters more complicated." *Id.* (internal citations omitted). The plaintiff also submitted a 2013 National Law Journal Billing Survey listing the average billing rates for big law partners in DC firms. *Id.* at *7. The court found, however, that "missing from the plaintiff's submissions is evidence that the prevailing market rate for the services these attorneys provide corresponds to the rates set out in the *Salazar*/LSI Matrix," noting that only two of the attorneys who submitted declarations stated that they charged rates according to the LSI *Laffey* Matrix, and only one of those attorneys actually collected fees at these rates. *Id.* Furthermore, the court found that defendant's evidence showed that "in the specific context of IDEA litigation, prevailing plaintiffs are most frequently reimbursed at or just below the rates set out in the USAO *Laffey* Matrix." *Id.* at *8–9. Therefore, the court concluded that "absent additional evidence demonstrating that her requested rate is in line with rates actually charged and collected by IDEA practitioners in this jurisdiction, the plaintiff's reliance on the *Salazar*/LSI Matrix in this case is not supported with the evidentiary record required by D.C. Circuit on appeal in this case." *Id.*

Plaintiff here offered strikingly similar evidence—unsurprising given that the same attorney litigated both cases. Plaintiff offered the following: (1) a declaration from Nicholas Ostrem, plaintiff's counsel in the administrative proceedings, *see* Ostrem Dec., ECF No. 23-4; (2) a declaration from Douglas Tyrka, plaintiff's counsel in the federal court proceedings in this

matter, *see* Tyrka Decl.; (3) a declaration by Dr. Michael Kavanaugh explaining how the LSI *Laffey* Matrix is calculated and why it is a better metric than the USAO matrix, *see* Kavanaugh Decl., ECF No. 23-3; (4) a 2013 National Law Journal billing survey showing the hourly rates for partners in big law firms, *see* NLJ Billing Survey, ECF No. 23-11; and (5) declarations from several IDEA attorneys stating that they have found IDEA litigation to be as complex as their work in other areas of the law, *see* Savit Decl., Moran Decl., Hill Decl., Mendoza Decl., Hecht Decl. This Court notes that all of these declarations, with the exception of the Ostrem declaration, were submitted by the same attorneys who submitted declarations in the *Eley* litigation. *See Eley*, 2016 WL 4435187, at *6–7 (discussing the declarations of Douglas Tyrka, Diana M. Savit, Charles Moran, Domiento C.R. Hill, Maria G. Mendoza, and Alana Hecht).

Like *Eley*, however, plaintiff here has failed to provide evidence showing that the prevailing market rate for IDEA litigation is equal to the LSI *Laffey* Matrix. This Court considers nearly the same evidence that the *Eley* court considered, and largely adopts the same reasoning. Of the seven attorney declarations submitted, only three state that they charge rates equal to the LSI *Laffey* Matrix. *See* Tyrka Decl. ¶¶ 8–9; Moran Decl. ¶ 11; Ostrem Decl. ¶ 8; *cf. Eley*, 2016 WL 4435187, at *7 ("[O]f the six declarations submitted by the plaintiff, only two of the attorneys attest to charging rates comparable to those set out in the *Salazar*/LSI Matrix."). Of these, only Tyrka and Moran appear to actually have collected fees at these rates. *See* Tyrka Decl. ¶ 9 ("[T]he firm has had several clients who pay the firm those rates directly."); Moran Decl. ¶ 12 ("These rates are regularly paid by clients who retain the firm to litigate cases on a non-contingency basis."); *cf. Eley*, 2016 WL 4435187, at *7 ("Notably, however, only one of these attorneys appears to have collected fees at these billed rates."). Both Hecht and Hill declare that they have requested or received fees at a rate below the USAO *Laffey* Matrix. *See* Hecht Decl. ¶ 13; Hill Decl. ¶ 14;

*cf. Eley*, 2016 WL 4435187, at *7 ("[T]wo declarants report requesting or receiving fees at rates below those supplied by the USAO *Laffey* Matrix."). In addition, two declarants did not provide the rates they charge or collect. *See generally* Mendoza Decl.; Savit Decl.; *cf. Eley*, 2016 WL 4435187, at *7 ("[T]he remaining declarants provide no indication of the rates they charge or collect for IDEA matters."). Furthermore, the National Law Journal Billing Survey "is of limited value absent a showing that these rates also prevail in the particular context of IDEA matters." *Eley*, 2016 WL 4435187, at *7. The Kavanaugh Declaration similarly does not show that rates equivalent to the LSI *Laffey* Matrix are generally charged and collected by attorneys in IDEA litigation. Overall, the evidence presented by plaintiff is insufficient to show that the requested fee rates—those provided by the LSI *Laffey* matrix—"align with those generally commanded by IDEA practitioners in the District." *Id.* at *5.

In sum, although plaintiff has provided sufficient evidence to conclude that one of the *Laffey* matrices applies to IDEA litigation, and defendant has failed to provide specific evidence that the rate should be reduced to 75%, plaintiff has not shown that an award using the LSI *Laffey* matrix is warranted. Plaintiff's award will therefore be calculated using the USAO *Laffey* matrix.

### d. *Plaintiff will be reimbursed at current rates*

The final issue to determine is whether plaintiff should be reimbursed at current rates or historic rates—the rates in place at the time of the litigation. After reviewing Magistrate Judge Kay's Report and Recommendation and the entire record before the Court, the Court accepts and adopts Magistrate Judge Kay's recommendation that plaintiff be reimbursed at current rates. *See* R. & R. 15–16. Notably, defendant did not present any argument in opposition to plaintiff's claim for current rates. *Id.* at 16. Therefore, this Court will apply the 2015–2016 USAO *Laffey* rate. *Id.*

The hourly rate for Mr. Ostrem, with 8 years of experience, will be $386.[1] The hourly rate for Mr. Tyrka, with 18 years of experience, will be $504.

### C.     The Number of Hours Reasonably Expended on the Litigation

With respect to the second part of Magistrate Judge Kay's Report and Recommendation, "The Number of Hours Reasonably Expended on the Litigation," neither plaintiff nor defendant has lodged objections. After consideration of the Report and Recommendation, the absence of either party's objections, and the entire record before the Court, the Court will adopt in Part II.B.2 of Magistrate Judge Kay's Report and Recommendation. 4.7 hours will be deducted from Mr. Ostrem's time for non-reimbursable work. R. & R. 19. Six hours of Mr. Ostrem's time will be reduced to half the hourly rate because they consisted of travel time. *Id.* at 21. 3.2 hours of Mr. Ostrem's time and 9.25 hours of Mr. Tyrka's time will be reduced to half of the full USAO *Laffey* rates for fees-on-fees litigation. *Id.* at 22. Plaintiff will be reimbursed for copying costs at a rate of $0.15 per page. *Id.* at 22. However, because this Court finds that plaintiffs are to be reimbursed according to full USAO *Laffey* rates, instead of 75% USAO *Laffey*, the numerical calculations differ from Magistrate Judge Kay's recommendations. The calculations are explained below.

### D.     Fee Calculations and Award

Mr. Ostrem and Mr. Tyrka are to be reimbursed at rates equivalent to the full USAO *Laffey* Matrix for 2015–2016, less any hours deducted or reduced. Mr. Ostrem billed a total of 96.10 hours, 4.7 of which are to be deducted because they were billed for non-reimbursable work. R. & R. 23. Of the 91.4 remaining hours, 6 were dedicated to travel time and 3.2 were dedicated to fees-on-fees litigation. *Id.* The six hours of travel time will be reimbursed at $193, half the reasonable hourly rate of $386, totaling $1,158. The 3.2 hours of fees-on-fees litigation will be

---

[1] The current USAO *Laffey* Matrix rates can be found at https://www.justice.gov/usao-dc/file/889176/download.

reimbursed at $193, half the maximum USAO *Laffey* rate of $386, totaling $617.60. The remaining 82.2 hours will be reimbursed at $386, totaling $31,729.20. Mr. Ostrom's total fee equals $33,504.80.

Mr. Tyrka billed a total of 28.75 hours. 9.25 of these hours were dedicated to fees-on-fees litigation. The 9.25 hours dedicated to fees-on-fees litigation will be reimbursed at a rate of $252, half the maximum USAO rate of $504, totaling $2,331. The remaining 19.5 hours will be reimbursed at a rate of $504, totaling $9,828. Mr. Tyrka's total fee equals $12,159.

Plaintiff will also be awarded $485 to cover the costs of filing fees and serving the complaint, and $146.60 to cover printing costs. The total fees and costs awarded to plaintiff will be $46,295.40.

As a final point, the Court notes defendant's argument that "[l]itigation costs under IDEA are often prohibitive for school districts," Def.'s Opp. 5, but finds itself rather unsympathetic to defendant's alleged plight. The best way to avoid attorneys' fees litigation is to comply with the IDEA and avoid litigation in the first place, which the District of Columbia appears to continuously fail to do as evidenced by the numerous attorneys' fees cases litigated in this court. Moreover, from plaintiff's declarations, the District appears, at least in some cases, unwilling to engage in settlement, or only willing to settle for meager amounts, and then forces attorneys to wait many months or years for reimbursement. *See generally* Tyrka Decl. (explaining that in the last three years, DCPS has only offered to settle less than five times and has only offered settlement amounts between $0 and $750, and that he has had to wait years in some cases for reimbursement). The Court finds it exceptionally unfortunate that otherwise competent attorneys are financially unable to provide assistance to low-income clients, or have been forced to close their IDEA practice, due to the issues apparently attendant with attempts to be reimbursed and subsequent fee litigation.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney's fees is granted in part and denied in part. Defendant will be ordered to reimburse plaintiff a total amount of $46,295.40. A separate order accompanies this Memorandum Opinion.

Date: September 26, 2016

_____
Royce C. Lamberth
United States District Judge